**AHRENS & McCARRON, INC.,
Plaintiff–Respondent,**

v.

**MULLENIX CORPORATION, and Ivan L. Mullenix, Defendants–Appellants.**

**No. 56984.**

Missouri Court of Appeals,
Eastern District,
Division Four.

June 26, 1990.

James Lawrence Durham, Clayton, for defendants-appellants.

Garry Seltzer, Clayton, for plaintiff-respondent.

JOSEPH J. SIMEONE, Senior Judge.

## I

These proceedings are appeals by defendants-appellants, Mullenix Corporation and Ivan L. Mullenix from a final judgment entered upon a jury verdict on July 31, 1989 by the circuit court of St. Louis County which judgment (1) awarded plaintiff-respondent, Ahrens & McCarron, Inc., a net amount of $126,490.19 including interest and attorney's fees for goods sold and delivered and (2) imposed a mechanic's lien in the total sum of $7,405,79—$5,631.78 principal and $1,774.01 interest—upon property known as Bogey Hills owned by appellant, Ivan Mullenix. We affirm.

## II

Appellant Ivan Mullenix is a real estate developer whose business, Mullenix Corporation, acts as general contractor for certain projects. In the mid–1980's, appellants were engaged in building two projects: Bogey Hills Apartments, located in St. Charles County and Summerwood Condominiums located in St. Louis County. Bogey Hills was intended to be built for sole ownership by Ivan Mullenix and Summerwood was built to be sold to individual owners. Respondent, Ahrens & McCarron, Inc. supplied various building materials and fixtures for the two developments from approximately July 1984 to September 1986.

In particular, respondent provided plastic laminate to be used as a backsplash in the kitchens at Bogey Hills. This material was used to cover an entire wall in each kitchen. Originally, Mullenix Corporation purchased standard grade plastic laminate in eight foot sheets from another supplier, but that supplier became unreliable. Ahrens & McCarron negotiated to supply vertical grade plastic laminate which was available in ten foot sections, a more desirable length. The vertical grade laminate was made identically to the standard grade laminate but was not as thick and therefore not as strong.

After the vertical grade laminate had been installed in a number of units, cracks began to appear. Respondent contacted the wholesaler of the laminate, Dexter Zaring, who examined the Bogey Hills project and determined that the cracks were caused by improper installation methods. Particularly, the laminate was installed directly onto gypsum board and not on a wood-based product and the laminate was not properly cut. Zaring sent a letter to Mullenix Corporation detailing the proper installation methods.

Appellants decided to discontinue use of the vertical grade laminate. Repairs were made on the 36 units which had already cracked at a total cost of $6,800. Vertical grade plastic laminate had been installed in 144 other units which had not cracked. Because of the possibility that these latter units might develop cracks, appellants decided to withhold payments on their balance due respondent for both the Bogey Hills and Summerwood projects. Appellants sought to hold these funds as a reserve to pay for any future repairs.

Respondent filed mechanic's liens against forty individual condominium units at Summerwood and against Bogey Hills on March 13, 1986. Later, it filed a petition in St. Louis County seeking to enforce the forty Summerwood mechanic's liens and to recover against Mullenix Corporation on open account, unpaid invoices not attributable to a mechanic's lien. Respondent also filed a petition in St. Charles County seeking enforcement of the Bogey Hills mechanic's lien. These two actions were consolidated for trial in St. Louis County.

The Summerwood petition contained a billing statement dated July 31, 1986, which stated the outstanding balance at $81,666.06 including late charges of $7,675.77.

These charges were computed at a rate of 1% per month pursuant to the credit agreement between Mullenix Corporation and respondent. The petition used this statement to support the $35,536.96 claim on open account. The forty mechanic's liens counts stated the amounts due which were drawn from the mechanic's liens themselves. The petition also stated that, as a personal judgment, Mullenix Corporation was indebted to respondent in the sum of $81,666.06, plus interest and attorney's fees. The Bogey Hills petition prayed for a judgment of $5,631.78 plus interest and attorney fees against Mullenix Corporation and a mechanic's lien for that amount against Bogey Hills. This amount was supported by four attached invoices.

Appellant Mullenix Corporation filed a counterclaim alleging breach of warranty and sought $98,500.00 in damages.

At trial, respondent's credit manager, Brenda Rathert, testified that she had prepared a four-page summary of the amounts due on each of the 42 counts which was introduced and denominated as exhibit 12. Appellants objected to the introduction of exhibit 12. For each count, she stated a principal amount, an interest amount of 12% and an attorney's fee amount of 15%. Each mechanic's lien claim also contained a separate column stating the same principal amount with an interest amount at 9% and no attorney's fees. The amounts reflected those in the petition and were based on the amounts stated in the mechanic's liens themselves. The open account amount represented the outstanding balance due which was not attributable to a mechanic's lien. This total of $35,536.95 was drawn from invoices and a billing statement dated May 31, 1989, all of which were included in exhibit 13. Appellants objected to the introduction of exhibit 12 on the ground that no foundation was laid.

Exhibit 11, which was submitted at the same time as exhibit 12, was a billing statement dated February 28, 1986 showing the total balance due of $82,287.66 including $3,758.63 in late charges.

At the conclusion of Ms. Rathert's testimony concerning the summary of the accounts, plaintiff's counsel read into evidence certain interrogatories answered by Mullenix. On Bogey Hills, Mullenix admitted owing $5,419, and calculated the unpaid balance due on Summerwood to be $72,183.08.

The attorney for Ahrens & McCarron took the stand and testified that he was an attorney and worked on these lawsuits. He testified that the claim began in February, 1986. His time records show that prior to trial he devoted 165 hours to the preparation and prosecution of the lawsuit and his billing rate is $95.00 per hour for a total of $15,684.50 up to the point of trial. His time records were introduced as evidence. No objection was made.

Mullenix's evidence, on its counterclaim, showed that the materials installed in the kitchens were vertical grade plastic laminate. After installing about 180 kitchens at Bogey Hills, cracks started appearing running "all the way across the wall." Corrections were made and standard grade laminate was used to correct the defects at a cost of $6,856.56 at Bogey Hills. Mr. Mullenix testified that payments were not made to Ahrens & McCarron because it "refused to correct our plastic laminate problems" at Bogey Hills, and he held the bills he owed at Summerwood as a "reserve against our problem at Bogey Hills."

At the conclusion of the trial, an instruction conference was had. Several objections to instructions were made by Mullenix at the conference.

The court instructed the jury. Among other instructions, the court gave instructions 7, 8, 11, and 12. Instruction No. 7, the verdict director on the mechanic's lien, informed the jury that its verdict must be for Ahrens & McCarron if it believed:

First, the materials mentioned in evidence were furnished and sold by Plaintiff to Defendant Mullenix Corp.; and

Second, the materials *sold* and furnished by Plaintiff to Defendant Mullenix Corp. were for use in the buildings owned by Defendant Ivan Mullenix....

Third, the materials *sold* and furnished by Plaintiff to Defendant Mullenix Corp.

are the same materials referred to in Plaintiffs' lien statement; and

Fourth, Plaintiff's charges were *reasonable;* and

Fifth, Plaintiff served its "Notice of Lien Claims" on Ivan Mullenix within four months of furnishing materials that were used, entered or consumed in the real property; and

Sixth, at least 10 days elapsed between the time Ivan Mullenix was served with the 'Notice of Lien Claims' and the mechanic's lien claims were filed for record with the office of the Clerk of the Circuit Court; and

Seventh, Plaintiff recorded its lien statement in the Office of the Circuit Clerk where the property was situated no later than four months after Plaintiff's materials were used, entered or consumed; and

Eighth, Plaintiff's lien statement is just and true and apprises the landowners or other interested parties of the materials Plaintiff claims it furnished so that the landowner or other may make an investigation to determine whether the materials actually went into the building and whether they were lienable items and whether the charges were *reasonable.*

Instruction No. 8 informed the jury:

If you find in favor of Plaintiff and against Defendant Mullenix Corporation, then for each separate piece of real estate you must award Plaintiff the reasonable value of the goods furnished with 12% simple interest therein *from the date recorded on each mechanic's lien claim.* (Emphasis added)....

Instruction No. 11 told the jury:

Your verdict must be for Plaintiff as its claim for money due on open account, interest and attorney's fees, if you believe:

First, at *Defendant's request* Plaintiff furnished to Defendant certain goods between the months of November, 1985 and July, 1986; and

Second, Plaintiff charged a total of $35,536.95 for such goods; and

Third, Plaintiff's charges were reasonable. (Emphasis added).

Instruction No. 12 told the jury:

If you find in favor of Plaintiff on its claim on open account then you must award Plaintiff the reasonable value of the goods furnished with 1% per month simple interest computed from July 31, 1986.

After the instructions were given, arguments were made, the jury retired and four hours later the jury rendered a verdict in favor of Ahrens & McCarron on all 41 counts of the petition filed in St. Louis County and on the petition filed in St. Charles County regarding the Bogey Hills apartments for all moneys due for goods sold plus interest and attorney's fees on the Summerwood property and on the open account. A personal judgment was imposed. The jury, however, declined to impose a mechanic's lien on each unit of the Summerwood condominiums. The jury awarded $5,631.78 for money due on the Bogey Hills property plus $1,774.01 interest at 9% and also on this count imposed a lien on that property. No attorney's fees were awarded as to the Bogey Hills property. The total award for the principal moneys due totaled $87,297.84, including the open account claim embodied in Count 41 of the St. Louis County petition of $35,536.95. The total interest awarded was $35,097.65 and the total attorney's fees awarded were $13,094.70 amounting to a grand total of $135,490.19. The jury also returned a verdict for the defendant, Mullenix Corporation, on its counterclaim for breach of warranty in the amount of $9,000.

In accordance with the jury verdict, the court entered judgment for the total sum of $135,490.19 (principal, interest and attorneys' fees) and offset the $9,000 due Mullenix, so that the court awarded Ahrens & McCarron a net judgment of $126,490.19. The judgment became final on July 31, 1986, after a motion to correct judgment was overruled.

In due time Mullenix Corporation and Ivan L. Mullenix appealed.

### III

On this appeal, appellants contend that the trial court erred in several respects and seek a reversal of the judgment of the trial court and a remand for a new trial.

Appellants make four points. They contend the trial court erred in admitting plaintiff's exhibit No. 12 (a summary of all the moneys due on lienable and nonlienable items showing the principal amount due, interest and attorney's fees) for the reason that (a) the summary was admitted without foundation and purports to summarize documents which were not admitted into evidence, (b) it shows a calculation of the principal amount due which is not supported by the evidence, (c) it shows an assessment of interest which is not supported by law or agreement, and (d) it shows a calculation of attorney's fees that is not supported by law or by agreement. Secondly, they contend the court erred in giving Instruction No. 7 because (a) the instruction permitted the imposition of a lien on the Bogey Hills property owned by Ivan L. Mullenix without indicating a proper measure of damages with respect to the imposition of a lien, and (b) the jury was instructed to return a verdict against Mullenix Corporation without first being required to find that it was liable to Ahrens & McCarron based upon an express or implied contract. Third, they contend the court erred in entering judgment for Ahrens & McCarron because the verdicts were based upon alleged erroneous instructions Nos. 8 and 12 in that Instruction No. 8 permitted the jury to award 12% interest from the date recorded on each mechanic lien statement and not from the date provided in the credit application which showed that payment was due at the end of the month following the date of purchase of the goods or the twentieth day of the month as provided in the monthly invoices sent by Ahrens & McCarron; and instruction No. 12 permitted the jury to award interest at 1% per month on the open account from July 31, 1986. Lastly, they contend the court erred in entering judgment for Ahrens because the verdicts were based upon Instruction No. 11 which instructed the jury to find for plaintiff on its open account claim if it found that plaintiff charged $35,536.95 for goods furnished between November, 1985 and July, 1986 whereas the evidence showed that Ahrens delivered goods on the open account claim between September, 1984 and July, 1986 and authorized the jury to return a verdict for $35,536.98 when the evidence shows Ahrens only charged $27,768.14 for the goods sold on the open account.

### IV

We turn to a resolution of the points, bearing in mind Rule 84.13(b). That Rule provides that "[n]o appellate court shall reverse any judgment unless it finds that error was committed by the trial court against appellant affecting the merits of the action."

■ The principal issue to be determined, as appellants admit, is whether the trial court erred in admitting exhibit No. 12, the summary of all the moneys due in the lienable and non-lienable items and whether it summarized evidence which was admitted. We recognize that the admission of improper evidence is a basis for reversal when the evidence either prejudices the appellant or adversely affects the jury in reaching its verdict. *Libby v. Hill*, 687 S.W.2d 264, 266 (Mo.App.1985); *David v. Mathews*, 649 S.W.2d 256, 259 (Mo.App. 1983). Appellant argues that the summary was prepared from documents which do not indicate the proper amounts due. The figures in the summary could not have come from exhibit 11 (the monthly statement dated February 28, 1986 which showed the amounts due to be $83,287.66 including late charges), or the exhibit attached to the petition filed in St. Louis County for the Summerwood Condominiums, showing the amount due to be $81,666.06; hence exhibit 12, appellants contend, was contrary to the evidence, and should not have been admitted.

■ The general principle relating to the use of a summary of records, as evidence, is that where the evidence is the result of the inspection of many papers, the examination of which cannot conveniently take

place in court, a summary in connection with testimony is admissible *Benz v. Powell,* 93 S.W.2d 877, 880 (Mo.1936).

■ A summary of such records may properly be admitted in evidence if the proponent of the summary establishes that the records upon which the summary is based are themselves admissible and they are available to the opposing party for inspection. *Albers v. Hemphill Contracting Co., Inc.,* 740 S.W.2d 660, 663 (Mo.App.1987); *Killian Construction Company v. Tri-City Construction Company,* 693 S.W.2d 819, 834 (Mo.App.1985); *State ex rel. State Highway Commission v. Cone,* 338 S.W.2d 22, 26 (Mo.1960); See also J. O'Brien *Missouri Law of Evidence,* § 13–9 at 350–351 (2nd ed. 1989) and cases cited therein and Fed.R.Evid. 1006. Furthermore, it has been held that a summary is admissible if the competency of the records themselves is established and the records are made available to the opposite party for cross-examination, *Union Elec. Co. v. Mansion House Ctr. No. Redev. Co.,* 494 S.W.2d 309, 364 (Mo.1973). In *Union Electric,* our Supreme Court stated that most courts require, and the better practice is, as a condition for using a summary, that a notice be given to the opposing party within a reasonable time prior to the actual use of a summary of plans to use a summary, but noted that where the controversy had extended over several years "we cannot help but notice that defendant failed to seek any discovery to inspect the records."

The "voluminous documents" principle is stated in 80 A.L.R.3d 405, 406 (1977):

Since the best evidence rule requires proof of the content of a writing by the writing itself, it must necessarily follow ... that the content of the writing may be proved by other means where ... for some legitimate reason it is not possible or feasible to produce it. Thus, there is an exception to the best evidence rule, based on necessity, which arises when the primary source of proof consists of numerous documents which cannot be conveniently examined in court and the fact to be proved can only be ascertained by an examination of the whole collec-

tion. In such a case, it is permissible for a witness to give a summary based on an inspection of the documents, or for the summary itself to be admitted in evidence.

It is generally held that the records themselves be accessible to the opponent. *Id.*

■ Tested by these principles, the court did not err in admitting the summary of the amounts due—exhibit 12. When Ms. Rathert was first handed exhibit 12, along with others, an objection was made and an extensive colloquy took place concerning the foundation for the exhibit and whether it was admissible. Ms. Rathert testified that she was familiar with how the accounts were established at Ahrens, how exhibit 12 was prepared, that the exhibit shows the "balances that our records show due against the individual units in the apartment complexes and as what we consider open account invoices." She also testified that the principal amounts on the summary were taken from the invoices. She also testified that the principal amount is the total amount of the invoices. She testified how she arrived at the attorney's fee of 15% and the interest based on the credit agreement. After her lengthy testimony, the court admitted exhibit 12. In this respect, the trial court did not abuse its discretion. There were more than 333 pages of invoices comprising the lien and non-lienable materials sold to Mullenix. For the benefit of the jury, Ms. Rathert summarized the balance due. The attorney's testimony showed that the compensation he was entitled to exceeded that shown on the summary. Despite the fact that this litigation had been going on for an extended period of time and trial was held some three years after suit was filed, we cannot help but note that Mullenix failed to seek any discovery of the records. Although there were discrepancies between exhibit 12 and exhibit 11 (the monthly statement) and the exhibit attached to the petition filed in St. Louis County, there was sufficient evidence for the summary to be used and admitted.

We conclude that the trial court did not err in admitting exhibit 12 over the objections of the appellants that no foundation was laid or that the exhibit did not reflect the evidence or supported by other competent evidence.

## V

Next, appellants complain that Instruction No. 7 is erroneous. Ivan Mullenix complains that it did not indicate any proper measure of damages with respect to the imposition of a lien on the Bogey Hills complex and the corporation complains that it did authorize a verdict without requiring the jury to find it was liable based upon an express or implied contract. Neither contention is meritorious.

Instructions must be considered and read together when assessing any claim of error. *Jefferson v. Biggar*, 416 S.W.2d 933, 939 (Mo.1967)[5]; *Collier v. Roth*, 515 S.W.2d 829, 837 (Mo.App.1974). When the instructions are considered as a whole and there is no misdirection, any error, is not prejudicial. *Griffon v. Northcott*, 655 S.W.2d 883, 866 (Mo.App.1983).

There is no MAI approved mechanic's lien instruction. When there is no MAI instruction, an instruction must conform to the theory of MAI, follow the substantive law and be readily understood. *Piva v. General American Life Ins. Co.*, 647 S.W.2d 866, 876 (Mo.App.1983). In such case the instruction should be simple, brief, impartial, free from argument and shall not submit detailed, evidentiary facts. *American Mortg. Inv. Co. v. Hardin-Stockton*, 671 S.W.2d 283, 289 (Mo.App. 1984).

Instruction No. 7 was not erroneous. It followed the precepts for not-in—MAI instructions, it tracked the substantive law embodied in the mechanic lien law, §§ 429.080, 429.100, 429.170 RSMo 1986 and when all the instructions are considered together there was no misdirection.

The jury could not have been misled as to the measure of damage under the voluminous evidence and testimony as to the amounts due and owing to Ahrens & McCarron.

Mullenix Corporation has no cause to complain that the instruction did not expressly require the finding of an express or implied contract. The instruction recited that the verdict must be for plaintiff if the materials were "furnished and sold" to defendant—clearly implying a contract and that the charges were reasonable. Furthermore the evidence showed that Mullenix, in its answers to interrogatories, admitted owing $5,419.00 for materials purchased and used in Bogey Hills and calculated the unpaid balance due for Summerwood Condominiums as $72,183.08. The jury was thereby circumscribed by the obligation that the charges must be reasonable. Instruction No. 7 was clear, concise and followed the substantive law. There was no need to include a measure of damages or to state that liability could be imposed without the jury first finding that Mullenix was liable based upon an express or implied contract.

Furthermore Mullenix Corporation cannot complain or be prejudiced by the giving of Instruction No. 7 because the jury declined to impose a lien against the corporation. A lien was only imposed on the Bogey Hills property, not Summerwood. We rule this point against appellants.

## VI

There is no merit to appellants' next point that Instruction No. 8 permitted the jury to award 12% (1% per month) from the date recorded on each mechanic lien statement rather than from the date provided in the credit application. That application provided that payment was due at the end of the month following the date of the purchase of the goods, or from the date provided in the monthly invoices which provided that payment was due on the twentieth day of the month after the purchase.

The record shows, by exhibit 11, that both lienable and non-lienable materials were sold to Mullenix between September 30, 1984 and the early part of 1986. The mechanic's liens were recorded between the dates of February, 1986 and

May, 1986. Recording the mechanic's liens was the last step prior to filing the actions in St. Charles and in St. Louis County. The moneys for the materials were due prior to the recording of each lien claim. Appellants' claim that the instruction is erroneous because it fails to define the term "date recorded on each mechanic's lien" or that there is "no evidence to support an agreement to pay interest from the date recorded on each mechanic's lien claim under any interpretation of that date" is not persuasive. The instruction favored the appellants. Any error which is harmless or that favors the complaining party is never a basis to reverse a judgment. *Crabb v. Mid–American Dairymen, Inc.,* 735 S.W.2d 714, 718 (Mo. banc 1987); *Fowler v. Park Corp.,* 673 S.W.2d 749 (Mo. banc 1984). So also with Instruction No. 12. It allowed the jury to award interest at 1% per month from July 31, 1986. That was the date of the monthly statement attached as exhibit A to the petition filed in St. Louis County. The payments for the materials were due long before then. Instruction No. 12 favored appellants. Therefore, there can be no prejudice or grounds for reversal. *Id.*

## VII

Lastly Mullenix Corporation complains that Instruction No. 11 is erroneous because it permitted the jury to award $35,536.95 on the open account asserted in Count 41 of the St. Louis County petition when the evidence allegedly showed that Ahrens only charged $27,768.14 and because it misstates the delivery dates in that the instruction permitted a verdict if the jury found that goods were furnished between November, 1985 and July, 1986.

As to the latter contention, the record shows by exhibit 11 that materials were sold to Mullenix between September 30, 1984 and the early part of 1986 and the exhibit attached to the petition shows that goods were sold from November, 1985. This portion of the instruction favors Mullenix Corporation so that there is no prejudicial error. *Crabb v. Mid–American Dairymen, Inc., supra,* 735 S.W.2d at 718.

As to the allegation that Ahrens only charged $27,768.14, and not $35,536.95 on the open account claim so that the claim for the open account for $35,636.95 is erroneous, Mullenix derives the $27,768.14 figure by subtracting from the total principal of $83,287.66 shown on exhibit No. 11, the February 28, 1986 monthly statement, the late charges of $3,758.63 and arriving at the figure of $79,529.03.

Then Mullenix deducts $51,760.79 from $79,529.03. The figure of $51,760.29 is arrived at by taking the principal amount of $87,297.84 awarded in the verdict and subtracting $35,536.95, the amount awarded on the open account, which equals $51,760.79. By deducting the $51,760.79 from $79,-529.03 (the net amount shown on exhibit No. 11) Mullenix concludes that only $27,-768.14 was due on the open account claim—count 41.

Deducting $51,760.79 from the net amount shown on exhibit No. 11, $79,-529.03, is not the proper mathematical computation to arrive at the amount due on Count 41—the open account claim. The evidence shown and adduced at trial was amply sufficient to support the amount of open account of $35,536.95. That amount was also pleaded in the petition. Mrs. Rathert testified as to Ahrens' invoices and testified as to exhibit No. 13 which listed the invoices for which no lien was asserted on the open account. Counsel, at trial, indicated that he had no objection to the introduction of exhibit No. 13—the invoices for which no lien was asserted. The invoices supporting a $35,535.95 principal balance were admitted into evidence without objection. We view the evidence in the light most favorable to the verdict. *Koehler v. Burlington Northern, Inc.,* 573 S.W.2d 938, 945 (Mo.App.1978). We rule this point against Mullenix Corporation.

## VIII

In concluding this difficult and complex case, we cannot help but note that this litigation has been ongoing for years, since the original petitions were filed in the Fall of 1986, and undoubtedly approximately two years before that. That is an intermi-

nable time. Trial was held in July, 1989, and Mullenix Corporation and Ivan L. Mullenix have raised many unsubstantial points on appeal. It is time for this litigation to end.

We have read the voluminous record including the two volume transcript, hundreds of pages in the legal file and the voluminous exhibits. We have read the briefs, and all the authorities relied upon by the appellant. We find no prejudicial error on the part of the trial court. The judgment, therefore, should be affirmed.

Judgment affirmed.

CARL R. GAERTNER, P.J., and STEPHAN, J., concur.